IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE B. WASHINGTON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>W. A. DUNCAN; R. BOUCHER; L. HERNANDEZ; E. MOORE; A. GOMEZ; R. PEREZ; L. BAEZ; W.L. MUNIZ;<br><br>　　　　Defendants. | No. C 05-2775 WHA (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER MEDIATION PROGRAM; STAYING CASE** |

## INTRODUCTION

This is a pro se section 1983 civil rights action filed pro se by a state prisoner. On September 30, 2008, defendants' motion for summary judgment was granted. In the order granting summary judgment, it was noted that plaintiff had not filed an opposition. Unbeknownst to the court, the clerk had in fact received the opposition four days earlier, but had not entered it into the docket until September 30, the same day of the order granting summary judgment. As a result, summary judgment was granted without knowledge or consideration of the opposition. Plaintiff appealed the judgment entered in defendants' favor, and the United States Courts of Appeal reversed and remanded with instructions to consider plaintiff's opposition. Having now considered plaintiff's opposition, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

**ANALYSIS**

**A.  STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*  The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial *Ibid.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**B.  PLAINTIFF'S CLAIMS**

Plaintiff's remaining two claims are that: (1) on April 10, 2004, defendant Moore used excessive force against him while escorting him to his new cell by "shoving" him against a fence; and (2) on April 11, 2004, defendants Hernandez, Gomez, Baez and Boucher used excessive force against him while retrieving a food tray from him that he refused to return.

"After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986).  What is required to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. *Id.* at 320.  The core

2

1 judicial inquiry is whether force was applied in a good-faith effort to maintain or restore
2 discipline, or maliciously and sadistically to cause harm. *Id.* at 320-21. This determination is
3 made by evaluating the need for application of force, the relationship between that need and the
4 amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the
5 responsible officials, and any efforts made to temper the severity of a forceful response.
6 *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

### 1. Moore's Use of Force on April 10, 2004

#### a. Factual Background

The parties agree that plaintiff was ordered to transfer from his cell in the prison's "Facility B" to a new cell in "Facility C." Initially, plaintiff had "adamantly" refused to follow the orders to move to Facility C or to pack his property for the move, but eventually he agreed to do so (Pl. Depo. 19:9-15; *see* Pl. Decl. 2). Defendant Moore was one of several officers assigned to escort plaintiff to his new cell on April 10, 2004. After plaintiff was given time to pack his property into a cart, Officer Pena (who is not a defendant) handcuffed him. Pena placed the handcuffs in front of plaintiff's body because plaintiff walked with a cane. Plaintiff wanted to pack more property from his cell, however, so he yelled "fuck you" at Pena and made "several derogatory remarks towards Officer Pena concerning his excessive weight" (Pl. Decl. 4; Moore Decl. ¶ 6). Moore approached plaintiff and calmed him down, and then Moore escorted plaintiff to Facility C while holding onto plaintiff's arm, with Pena and another officer walking with them. When they arrived at Facility C's sally-port gate, it was locked. There is some disagreement as to what happened at that point.

Moore states that plaintiff became "agitated," said: "Fuck you! Fat mother fucker!" and jerked his upper body in an attempt to break free from his grasp (Moore Decl. ¶ 10). Moore states that he then used "minimal pressure to place plaintiff against" a chain-link fence, until plaintiff calmed down, and then they entered Facility B (*ibid.*). Plaintiff states that Moore "shoved" him against a fence "with force," and that he "bounced" backwards (Pl. Decl. 6). According to plaintiff, he did not make any resistant or "furtive" movements or derogatory statements before Moore shoved him (*id*. 6-7). The parties agree that plaintiff was immediately

3

taken to see a nurse, who found an "abrasion/scratch" on his cheek and on his knuckle (Brinkman Decl., Ex. B).

### b. Analysis

Even if plaintiff's account is credited as true, i.e. that Moore pushed him against the fence without provocation, the amount of force used was de minimis and does not rise to the level of a constitutional violation. The United States Supreme Court has noted that not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition "de minimis" uses of physical force, provided that the use of force is not "of a sort repugnant to the conscience of mankind." *Ibid.* An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim. *Ibid*. Here, at worst Moore shoved plaintiff a single time, causing only a scratch or abrasion on plaintiff's cheek and hand. A slight injury of this nature indicates that a relatively small amount of force was applied. *See Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). Moore's pushing plaintiff a single time against a chain-link fence without a great deal of force, if true, is not "of a sort repugnant to the conscience of mankind" and therefore does not rise to the level of an Eighth Amendment violation under *Hudson*. *See* 503 U.S. at 9. Accordingly, summary judgment will be granted in defendant Moore's favor.

### 2. **Remaining Defendants' Use of Force on April 11, 2004**

### a. Factual Background

The parties agree that on April 11, 2004, plaintiff was in his cell and refused to return his food tray when ordered to do so by defendant Baez. Baez left and returned a short time later with defendants Hernandez and Gomez, as well as another officer (Aguirre) who is not a defendant. There is some disagreement as to the events that occurred after these officers came back to plaintiff's cell.

According to plaintiff's declaration, he was sitting on the bottom bunk bed while the food tray was on the top bunk near the cell door, the four officers came into his cell, and Hernandez struck him in the mouth with his baton. The officers then left with the tray, but

4

plaintiff put his cane in the door to keep it from closing. Defendant Baez sprayed pepper spray into the cell for two or three seconds, an alarm was sounded, and Hernandez sprayed pepper spray into the cell a second time. Plaintiff could not breathe or see well, so he retreated to the back of the cell and followed the officers' orders to take off his clothes for a search and to put his hands through the food port for handcuffing. Defendant Gomez handcuffed him and pulled his arms all the way through the food port, causing plaintiff to drop to his knees. Gomez then entered the cell and lifted plaintiff up by the arms, spun him around and pushed him to the ground, where plaintiff, who was still in handcuffs, struck his chest and chin and lost consciousness briefly. Gomez and Baez then "dragged" plaintiff in handcuffs by the arms for thirty-five feet into the housing unit's rotunda, where they let him drop to the ground again, causing him to strike his head and lose consciousness again. Defendant Boucher then ordered the application of a "spit mask" due to the blood coming out of plaintiff's mouth, which further hampered his breathing. Plaintiff was then taken in a gurney to the medical clinic.

According to defendants' declarations, when Baez came back to plaintiff's cell with the other officers, plaintiff threw garbage and the food tray through the food port. Plaintiff also screamed profanities and stuck his cane through the food port and swung it at them, striking Hernandez on the wrist. Defendants state that he refused orders to stop swinging his cane, even after Baez sprayed pepper-spray into his cell, so Hernandez sprayed pepper-spray into the cell a second time. Defendants state that plaintiff then took off his clothes, and refused orders to get dressed and be handcuffed. After he eventually agreed to be handcuffed, according to defendants, plaintiff began kicking the door, so Gomez "guided" him to the ground and leg restraints were applied (Baez Decl. ¶ 10). Defendants also state that plaintiff then refused to walk, and they "placed" him on the ground again (*id.* ¶ 11). Then plaintiff began spitting, so they applied a "spit hood" on him, and he was transported to the clinic for treatment.

The nurse treated plaintiff for exposure to pepper-spray and for cuts and swelling on his mouth and lips. A doctor who examined him later that day for mental health issues confirmed that he had a cut on his lip. Defendant Hernandez was also treated for bruising and swelling on his wrist and forearm.

5

b.     <u>Analysis</u>

Plaintiff's declaration has created a number of genuinely disputed facts. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) ("self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory"). The parties disagree as to the amount and type of force used, in particular: whether Hernandez ever struck plaintiff in the mouth with his baton, whether Gomez pulled plaintiff's arms through the food port after handcuffing, whether Gomez and Baez dragged plaintiff to the rotunda, and whether they pushed or dropped him to the ground on two occasions causing him to lose consciousness. The parties also offer conflicting accounts as to how much plaintiff resisted and provoked defendants. Although they agree that plaintiff initially refused to return the food tray, and plaintiff admits that he used his cane to obstruct their efforts to close the cell door, plaintiff denies throwing garbage out of his cell at the defendants when they returned to get the tray, he denies swinging his cane at the officers or striking Hernandez on the wrist, and the parties disagree as to whether plaintiff refused to be handcuffed, refused to get dressed, kicked the cell doors, and refused to walk once handcuffed.

At this stage, plaintiff's version of these events must be taken as true. *See Leslie*, 198 F.3d at 1158. According to plaintiff, when Hernandez struck him in the mouth with a baton, he was no longer refusing to return the tray, which the officers could retrieve from the top bunk, and he was not verbally or physically resisting Hernandez or the other three officers in the cell. Later, according to plaintiff's account, when Hernandez sprayed the pepper-spray into the cell a second time, plaintiff had stopped using his cane to try to block the door and was not otherwise resisting the defendants. Indeed, according to plaintiff's account, he could hardly breathe or see from the pepper-spray. Plaintiff was also no longer resisting and he had complied with all orders to undress for a search and place his hands through the food port for handcuffing when Gomez pulled plaintiff's arms all the way through the food port and then entered the cell and pushed plaintiff to the ground, knocking him unconscious briefly. Finally, plaintiff denies refusing to walk at that point, obviating any need for Baez and Gomez to drag him to the rotunda or to drop him to the ground a second time, causing him to strike his head on the

6

ground again.

Plaintiff's account allows the reasonable inference that defendants Hernandez, Baez and Gomez were not trying to restore order or discipline, but that they used force unnecessarily after plaintiff had stopped disobeying orders and become compliant. As a result, a reasonable juror could infer that they used force maliciously and sadistically in order to hurt plaintiff, and the factual disputes described above are not just genuine, they are material. *See Liberty Lobby*, 477 U.S. at 252 (in order to defeat summary judgment, "non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor"). Moreover, although defendant Sergeant Boucher is not alleged to have applied any force himself, it is undisputed that he was present during the use of force by the other defendants, that he was a superior officer, and that he did not intercede. A jury could therefore reasonably find that he violated plaintiff's Eighth Amendment rights. *Cf. Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (officers may be held liable if they have an opportunity to intercede when their fellow officers violate the constitutional rights of a plaintiff but fail to do so). In addition, under plaintiff's version of the events, defendants are not be entitled to qualified immunity, because it would be clear to a reasonable officer that it is not permissible to strike a non-resistant plaintiff in the mouth with a baton, to pepper-spray him a second time after he stopped resisting, and then, after handcuffing him, to pull his arms through a food port, drag him a distance of approximately 35 feet, and push him to the ground twice causing him to knock head and lose consciousness. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (qualified immunity requires showing that it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted). Accordingly, summary judgment will not be granted in favor of defendants Baez, Hernandez, Gomez and Boucher.

**C.     Referral to Pro Se Prisoner Mediation Program**

The court has established a Pro Se Prisoner Mediation Program. Certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner mediation proceedings. The proceedings consist of one or more conferences as determined by the mediator. The conferences are generally conducted at the plaintiff's institution, with the defendants or their

7

representatives attending by videoconferencing if they wish. As summary judgment is being denied on certain claims, this case is appropriate for mediation and will be referred to the Pro Se Prisoner Mediation Program.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment (document number 52 on the docket) is **DENIED** as to plaintiff's excessive force claims against defendants Baez, Hernandez, Gomez and Boucher. Summary judgment is **GRANTED** in favor of defendant Moore.

This case is **REFERRED** to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case except those related to the mediation and compliance with the subpoena as ordered above are **STAYED** pending completion of that procedure.

The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Vadas shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

The clerk shall mail a copy of the court file, including a copy of this order, to Magistrate Judge Nandor Vadas.

**IT IS SO ORDERED.**

Dated: May   23  , 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.05\WASHINGTON775.MSJ2.wpd

8